STATE, Respondent, v. HANKS, Appellant.

(246 N. W. 107.)

(File No. 7035. Opinion filed December 30, 1932.)

*Mundt & Mundt,* of Sioux Falls, for Appellant.
*M. Q. Sharpe,* Attorney General, for the State.

WARREN, J.   An information was filed in McCook county, S. D., in September, 1927, ·charging John Hanks with the crime of grand larceny by taking, stealing, and carrying away a white barrow hog belonging to William Kroger and B. F. Meyers.   To the information the defendant pleaded not guilty.   After a trial in McCook county and a reversal of the judgment and order appealed from by this court, reported in 55 S. D. 63, 224 N. W. 946, the second trial of the defendant took place in Lake county, S. D., to which place the trial had been transferred by the circuit court upon a petition by the defendant for a change of venue.

In September, 1929, at the conclusion of the last trial, the defendant was found guilty as charged in the information.   Defendant, after being found guilty and sentenced, moved for a new trial, and appealed to this court from the order and judgment.   Nineteen stipulations extending time for filing briefs on appeal were entered into by the parties, and the last of the briefs was filed in this court by appellant December 16, 1932.

Sixty assignments of error are urged by the appellant for a reversal of the verdict and judgment. Many of them relate to the court's ruling on admission and exclusion of and motions to strike evidence. We have carefully reviewed the rulings complained of, and, while some of the errors complained of are close to the border line, none of them fall within the well-established rules of law warranting a reversal on account of prejudicial rulings. In so holding, we are mindful of the fact that due precaution should be observed in admitting certain classes of evidence so as to not create prejudice in the minds of the jury.

■ The evidence of tracing defendant's car rim tracks ending a short distance west of the school grounds, and there being a coal shed on the school grounds, and finding coal in the defendant's car in which the butchered hog was transported into Salem, may be said to be a suspicious circumstance, and should be admitted reluctantly, yet it tended to throw some light upon the defendant's movements the night the hog was stolen, and the contents of his automobile at the time he hauled the butchered hog to Salem. We believe the state was justified in presenting this testimony in detailing the various movements and acts of the defendant on the particular night in question under the rule stated in 16 C. J. 588.

■■ The defendant challenges the sufficiency of the evidence. We have heretofore made a careful examination of the entire record, and it would appear that on the morning of March 5, 1927, the defendant drove into Salem from the east in a Ford touring car. The car contained a newly butchered Hampshire hog, still warm, and its throat cut. It had been hit in the head with some sharp instrument, but no broken bones nor other marks of violence upon the carcass were found. There was found in the car an iron knife and a jackknife, both bloody. There is evidence that Meyers and Kroger had Hampshire hogs running loose on the farm, and that one of them was gone. The size, age, weight, marks, and description of the hog found in the defendant's car tallied exactly with the hog missing from the Meyers and Kroger farm.

Kroger, part owner of the hog, testified that there was a hog running loose on the farm, and that it was taken without their consent. There is evidence to show that the defendant was arrested

upon his arrival in Salem, and that the hog was in the car; that it had rained some time during the night; that a tire had been removed from one of the front wheels of the car; also that from the tracks made by the rimmed wheel that a tire had been changed near the school house some four and one-half miles east of Salem; and that there was a small load of coal in the car.

The Meyer and Kroger farm is located approximately two miles north of the schoolhouse. There is evidence tending to show that the defendant spent the entire night of March 4th and up to the early morning of March 5th, when he was arrested in Salem, along the roads between Salem and a point eight miles east and four miles north of Salem; that he had had trouble with his car; and that when he was arrested, in response to questions asked as to where he got the hog, he refused and failed to make an explanation. Later he stated that he had hit the hog in the road. Defendant never admitted or denied any other details. The defense claimed that it was a Hampshire hog belonging to Norman Stoneback who lived east and north of Salem some eight miles, and that the stomach of the dead hog indicated that it had been eating oats, similar to that fed by Stoneback. Stoneback, however, made no claim to the hog involved. The defendant did not testify during the trial. The defendant in the statement of his brief offers an explanation of how he happened to have this hog in his possession by saying that he had had an accident on the evening of March 4th near Stoneback's corner by running into a pig, which was in his possession when arrested by the deputy sheriff; that, after he had repaired his car, after the accident, he observed that the pig in question was badly injured, and that it lay helpless on the ground and was unable to walk, so he thought best to kill the injured pig, and later he decided to salvage it rather than to let it lay, fully intending to take up the matter of the accident with Stoneback by going out there himself, but that he was prevented in going out there on account of having been arrested.

The two theories were thus placed before the jury—the contention by the state that the hog was stolen, butchered, and transported with the intent to deprive the owners thereof; defendant offering the explanation that he intended to communicate and explain the matter to Stoneback, who he thought was the owner

thereof. Considerable evidence was admitted over defendant's objections for the purpose of explaining to the jury the defendant's possession, his all night's absence, the identity of the hog, the ownership, and even the kind of feed that had been fed to the hog. In that the court did not err. The jury who had heard the evidence found the defendant guilty as charged in the information. We are not in position from the record before us to say that there is not sufficient evidence to sustain the conviction. It was their province to say what witnesses they would believe and to pass upon the various incidents and circumstances which, as testified to, were probable or improbable. We are unable to find any irregularities or good grounds for disturbing the verdict.

The defendant has challenged the record as to the proof of the corpus delicti, and has offered a definition in support of his contention, and states that, as applied to this particular offense, it must appear that a certain result has been produced under the information, to wit: That a certain hog was lost, that it was lost by felonious taking and carrying away and with intent to deprive the owners Kroger and Meyers thereof, and he further contends the proof of the charge in a criminal cause involves the proof that the act itself was done, and that it was done by the person charged and by none other. We have heretofore reviewed the evidence as to its sufficiency to warrant a conviction, and from what we have just said it is apparent that it constitutes an answer to this particular assignment of error. There is testimony, if believed to establish the state's theory of the unlawful taking and intent to deprive the owners. Our views are fully supported by previous decisions in State v. Johnson, 49 S. D. 572, 207 N. W. 539, and State v. Harrington, 47 S. D. 350, 198 N. W. 819.

We have carefully examined the record as to the alleged misconduct and irregularities of the adverse party and counsel during the trial. Those matters were all submitted to the able trial judge upon a motion for new trial, and, upon due consideration, the motion for new trial was denied, which in effect overrules the appellant's contentions. From the examination of the record that we have made, we believe that he was fully justified in so ruling.

The appellant requested the court to give certain instructions Nos. 2 and 3. An examination of the requested instructions

in which the appellant sought to have the court instruct on the subject of theft of the carcass of a dead hog as distinguished from the killing of the hog with the intent to steal the carcass we feel was predicated on, and would require the court to instruct upon, a branch of the evidence which was clearly a self-serving declaration and hearsay. The court in refusing to so instruct followed and was governed by what this court said in State v. Cherrington, 34 S. D. 562, 149 N. W. 421. True that there was some offer of proof, but even the testimony and the offer of proof could not possibly evade the fact that the testimony upon which the requested instructions were predicated was clearly self-serving and hearsay. We feel that the record fully justified the trial court in refusing to give instructions Nos. 2 and 3.

Our attention has been called to section 4213, 1919 S. D. Rev. Code, as amended by Laws 1927 (chapter 155), defining grand larceny and specifically enumerating the value of the property stolen. We feel that the evidence fully warrants the jury in finding the defendant guilty of grand larceny. Some courts have held that, if one should kill an animal for the purpose of stealing it and then carry away the dead animal, it would be grand larceny. In this case there is sufficient evidence to sustain that view. But, as the record now stands, the trial court was fully justified in refusing to give the requested instructions.

Other errors complained of have been carefully considered, and we feel are not prejudicial, and could have in no event affected the outcome or changed the result reached by the jury.

The order and judgment appealed from are affirmed.

POLLEY, J., concurs.

CAMPBELL, P. J., concurs in result.

ROBERTS, and RUDOLPH, JJ., disqualified and not sitting.